IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY A. ARMSTEAD, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No.  04-1675 |
| | ) |
| NORFOLK SOUTHERN CORPORATION, | ) |
| | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

# OPINION
# and
# ORDER OF COURT

## SYNOPSIS

Pending is a Motion for Summary Judgment filed by Defendant, Norfolk Southern Corporation.  (Docket No. 13).  Therein, Defendant asserts that summary judgment should be granted as to Plaintiff's claim for age discrimination, brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621, *et seq.*, and as to Plaintiff's claim for reverse gender discrimination, brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. §2000e, *et seq.* Plaintiff filed a Brief in Opposition thereto.  (Docket No. 22).  Based on my opinion set forth below, said Motion (Docket No. 13) is granted.

## I. **BACKGROUND**[1]

Plaintiff, Timothy Armstead, is a 45 year old male, born on April 23, 1960. He began his railroad employment with Consolidated Rail Corporation ("Conrail") on April 4, 1992. His first job with Conrail was at Conway as a carman. That position was an agreement position, i.e. a position wherein he was covered by a Collective Bargaining Agreement. In 1994, Plaintiff took a position as a mechanical supervisor, which, on Conrail, was also an agreement position. He also retained his seniority rights as a carman. Effective June 1, 1999, Plaintiff became an employee of Defendant, Norfolk Southern Corporation, as a result of the division and operation of Conrail assets by Defendant and CSX Transportation ("CSXT") in an acquisition approved by the Surface Transportation Board. Plaintiff continued to work as a mechanical supervisor, a position that, at Defendant, is not covered by a collective bargaining agreement and, thus, is a non-agreement position.

As a non-agreement mechanical supervisor, Plaintiff's primary duties were to lead, plan and direct agreement employees in the repair and maintenance of freight cars. He was one of six mechanical supervisors (Ross Brandenberg, Michael Bilinsky, Gregory Dalton, Gregory Sebastian, John Zillian, and Timothy Armstead) plus two foremen, Mario Lembo and George Powell, working at the Conway car shop.

In September, 2003, Defendant implemented a voluntary separation plan/program (VSP) designed to reduce the size of the non-agreement work force. Individuals with 20 years of service who had attained the age of 52 were eligible for

---

[1] The facts set forth in the background section are undisputed by the parties, unless otherwise noted.

the VSP. At the same time, the company was engaged in a review of the non-agreement work force with the goal of determining proper staffing levels. The overall plan was to reduce the number of employees and maximize efficient and effective utilization of the non-agreement staff. As a result of individuals leaving pursuant to the VSP and the elimination of jobs as a result of this restructuring, some locations were determined to be overstaffed and others understaffed. The Louisville, Kentucy location was determined to be understaffed and in need of an additional mechanical supervisor. On the other hand, at the Conway facility where Plaintiff worked, it was determined that the car shop was overstaffed by one mechanical supervisor.

Steve Moore, Senior General Foreman and Plaintiff's supervisor, reported to Scott Kershaw, who, at all relevant times, held the position of Division Manager of Mechanical Operations in the Harrisburg Division. Kershaw was on a team which was charged with the duty of determining the post-VSP staffing levels. Kershaw instructed Moore to make a determination as to which of the mechanical supervisor positions on the car side in Conway would be eliminated as a result of the force reduction. Moore did not consider any of the mechanical supervisors on the locomotive side.

Initially, Moore ask Armstead, Brandenberg, Bilinsky, Dalton, Sebastian and Zillian if they would volunteer to relocate and fill the mechanical supervisor position in Kentucky. Each of these individuals declined. The transfer would have involved no loss of pay or benefits. As a result, Moore had to choose someone. Moore chose

Plaintiff.

Thus, Moore and George Powell, a general foreman, met with Plaintiff and advised him that he would have to relocate to Louisville, Kentucky to keep his job as a mechanical supervisor. According to Plaintiff, Powell told Plaintiff that he was the "youngest worker." Plaintiff took that to mean youngest in terms of chronological age as opposed to youngest in terms of seniority.

Plaintiff indicated that he wanted some time to decide whether or not to take the position in Louisville, Kentucky. Ultimately, he decided against relocating. Because he had previously been a carman and member of a labor union, Plaintiff had the ability to exercise his seniority and return to a job as a carman, which he did. He remains a carman to this day, employed and working at the Conway yard.

The instant lawsuit filed on behalf of Plaintiff alleges violations of the ADEA and Title VII. Defendant has filed a Motion for Summary Judgment as to both claims. (Docket No. 13). Plaintiff has filed a Brief in Opposition thereto. (Docket No. 22). The case is now ripe for review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and

upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.*

Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex,* 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988), *quoting Celotex*, 477 U.S. at 322.

**B. COUNT I - ADEA**

Count I of Plaintiff's Complaint seeks relief for age discrimination pursuant to the ADEA, 29 U.S.C. §621, *et seq. See,* Docket No. 1, ¶¶32-37. There are two avenues of proving an ADEA claim: (1) direct evidence under a "mixed motives" theory of liability, *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989), or (2) circumstantial evidence of discrimination under a burden shifting theory of liability. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Because there is no direct evidence presented in the record and because both parties appear argue that this case is a case of circumstantial evidence, I will proceed with a burden shifting analysis set forth in *McDonnell Douglas*. To establish a *prima facie* case of age discrimination under the ADEA, Plaintiff must show that: 1) he is a member of a protected class, i.e. over forty, (2) is qualified for the position, (3) suffered from an adverse employment action, and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination. *Winter v. Cycam/MedSource Technologies,* 2006 WL 91567, No. 05-3593 *2 (3d Cir. Jan. 17, 2006), *citing, Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir.2004). In the context of a reduction in force age discrimination case, the fourth element changes such that plaintiff must show that the employer retained a sufficiently younger similarly situated employee. *Monaco v. American General Assur. Co.*, 359 F.3d 296, 300-01 (3d Cri. 2004), *citing, Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 249-50 (3d Cir.2002).

If Plaintiff meets his *prima facie* case, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Kautz v. Met-Pro Corp.,* 412 F.3d 463, 465 (3d Cir. 2005). The defendant, however, is not required to show that the nondiscriminatory reason was the motivating reason for the adverse employment action. *Id.*; *see, Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 148, 254 (1981). Thus, it is a minimal burden for Defendant to meet. If the defendant meets this minimal burden, then the burden shifts back to Plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination. *McDonnell Douglas,* 411 US. at 802; *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir. 1997). To succeed on this element of the burden shifting test, a plaintiff must now point to evidence from which a reasonable fact finder could conclude either: (1) that the employer's articulated legitimate reasons are unworthy of belief (i.e. pretextual), or (2) that unlawful discrimination "was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes,* 32 F.3d at 764; *Sheridan v. E.I. Dupont de Nemours and Co.,* 100 F.3d 1061 (3d Cir. 1996), *cert. denied,* 521 U.S. 1129 (1997). To prove pretext:

> [T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incohererencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them "unworthy of credence"...and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons"....

*Fuentes,* 32 F.3d at 765 (citations omitted). It is not enough to show that the

7

employer was wrong or mistaken, rather it is plaintiff's burden to show discriminatory animus, not whether the employer is wise, shrewd, prudent or competent. *Jones v. School District of Philadelphia,* 198 F.3d 404, 413 (3d Cir. 1999).

Defendant asserts that Plaintiff cannot meet elements three and four of his *prima facie* case. In addition, Defendant argues that Plaintiff has failed to establish any evidence of pretext. *See,* Docket No. 14, p. 8-16.

### 1. Adverse employment action

An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 761 (1998). "[A]n adverse employment action involves some harm to an employee's employment opportunities." *Nelson v. Upsala College*, 51 F.3d 383, 388 n. 6 (3d Cir.1995). It "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Caver v. City of Trenton*, 420 F.3d 243, 255 (3d Cir. 2005); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir.1997); *Scott v. New Jersey*, 143 Fed.Appx. 443, *3 (3d Cir. 2005).

In this case, due to the reduction in force, Plaintiff's supervisor chose Plaintiff as the employee whose position was eliminated. As a result, Plaintiff was given the ultimatum of remaining as a mechanical supervisor, but he had to transfer to Kentucky. Plaintiff chose not to take the transfer. "If termination during a reduction-in-force, in and of itself, is insufficient to establish a prima facie case of

age discrimination, then an offer of relocation with the same job title and pay is certainly insufficient to establish a prima facie case of age discrimination." *Haimovitz v. U.S. Dept. of Justice*, 720 F.Supp. 516, 526 (W.D. Pa. 1989). "'[A] purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action.'" *Scott v. New Jersey*, 143 Fed.Appx. 443, *3 (3d Cir. 2005), *quoting, Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir.1996), *cited with approval in Robinson*, 120 F.3d at 1301; *Fallon v. Meissner*, 66 Fed.Appx. 348, 351 (3d Cir. 2003). *See, Washco v. Federal Express Corp.,* 402 F.Supp.2d 547, 558 (E.D. Pa. 2005) (a transfer to different position offering the same pay and benefits was not an adverse employment action); *Boykins v. Lucent Technologies, Inc.*, 78 F.Supp.2d 402, 415 (E.D.Pa. 2000).

I have found no evidence, and Plaintiff has failed to point to any evidence, that the opportunity to remain as a mechanical supervisor in Kentucky would have adversely altered Plaintiff's compensation, terms, condition, or privileges of employment or deprived Plaintiff of employment opportunities or adversely affected his status as an employee. In fact, there is evidence that Plaintiff would have received a raise (Docket No. 16, Ex. 13, p. 17; and Ex. 15, ¶6) and full relocation benefits (Docket No. 16, Ex. 15, ¶¶7-9). There is no evidence to suggest that this was anything other than a purely lateral transfer. "Although plaintiff may have concluded that such a relocation would adversely affect his personal life, the ADEA only addresses those business decisions which adversely affect one's employment

9

opportunities." *Haimovitz v. U.S. Dept. of Justice*, 720 F.Supp. 516, 526 (W.D. Pa. 1989). Thus, without more, Plaintiff has failed to meet the third prong of his *prima facie* test, that he suffered an adverse employment action. Therefore, summary judgment in favor of Defendant as to Plaintiff's ADEA claim is warranted on this ground alone.

Nevertheless, even if I did not find summary judgment was warranted as to the third prong, summary judgment would still be warranted based on the fourth prong of a *prima facie* case.

### 2. Retention of a sufficiently younger similarly situated employee

As stated above, the fourth element of a *prima facie* case in a reduction in force case is that the employer retained sufficiently younger similarly situated employees. In this regard, Plaintiff appears to think that he has suffered age discrimination since he was chosen for the transfer because he was the "youngest." *See,* Plaintiff's Brief in Opposition, pp. 5-6, 9. That would be reverse age discrimination. The United States Supreme Court has stated, however, that there is no cause of action for reverse age discrimination. *General Dynamics Land Systems, Inc. v. Kline,* 540 U.S. 581, 600 (2004) ("[T]he text, structure, purpose, and history of the ADEA, along with its relationship to other federal statutes, as showing that the statute does not mean to stop an employer from favoring an older employee over a younger one."). Consequently, I find this theory has no merit.

Plaintiff also appears to argue that the pool of similarly situated employees should have consisted of all mechanical supervisors at Conway, both car side and

locomotive side. *See,* Plaintiff's Brief in Opposition, p. 4. The basis for this argument is two fold: 1) because Plaintiff believes that mechanical supervisors are interchangeable; and 2) because the position in Kentucky handled both the car and locomotive sides. *Id.* at 3. First, the record reveals that the position in Kentucky was on the car side, not on both sides. Docket No. 22-5, p. 32. Consequently, I find no merit to this argument.

Second, while it is true that Defendant uses the job title of mechanical supervisor for various positions, it does not equate that all mechanical supervisors are similarly situated to Plaintiff. Scott Kershaw was the division manager of mechanical operations who oversaw, *inter alia,* the car side at Conway. Docket No. 15, p. 25. The locomotive side at Conway did not fall under Mr. Kershaw's jurisdiction. Docket No. 15, p. 28. Mr. Kershaw testified as to the differences between the duties between the locomotive side and the car side at Conway in November of 2003. *Id.* at 28-31. The mechanical supervisors on the car side work separately from the mechanical supervisors on the locomotive side. *Id.* at 28-29. The mechanical supervisors on the car side supervise carmen. *Id.* at 29. "For the most part they inspect and repair freight cars." *Id.*

With regard to locomotive supervisors, Mr. Kershaw testified as follows:

> The locomotive supervisors would be in charge of inspecting and repairing locomotives, would have to have extensive knowledge in locomotive repair, and he is in charge of locomotive crafts. There are a few carmen that do work over there under the union agreement. The do have some pieces, parts on the locomotive that they work on, but for the most part they have some machinists and electricians with some laborers and sheet metal workers,

> boilermakers, et cetera.
>
> They mainly have a large fuel pad operation over there that runs 24 hours a day, seven days a week. They bring locomotives in for what we call servicing. That's where they clean them up, fuel them, you know, add oil, water, check them out, make sure they're safe to make the next trip, sort of like what you see if you're flying on an airplane when the guys there down on the ground are just kind of fueling it and checking it out.
>
> Then they also have a large shop operation where if they do have locomotives that come in and have required repairs to be made on them, then they shuffle them down to the locomotive shop.
>
> So there just mainly they're in charge of the operations of the locomotive department, and the mechanical supervisors on the car side is in charge of the car department....

*Id.* at 29-30.

Mr. Kershaw instructed Mr. Moore, Plaintiff's supervisor, to determine which mechanical supervisor's position was to be eliminated. Mr. Moore testified that the locomotive shop was a totally different area that was out of his area of supervision and control and, therefore, he would not have considered anyone in the locomotive shop. Docket No. 16, p. 30. Viewing this evidence in the light most favorable to Plaintiff, I find that there is no genuine issue that the similarly situated individuals properly considered for the transfer were the mechanical supervisors who worked under Mr. Moore at Conway car shop.

Of this pool of individuals, there is no dispute that all were over forty and that Plaintiff was the youngest individual in terms of age. *Compare,* Docket No. 15, Ex. 2 (Armstead d/o/b 4/23/60); *with,* Docket No. 15, Ex. 5 (Brandenberg d/o/b 6/18/58);

12

Docket No. 16, Ex. 6 (Bilinsky d/o/b 3/11/52); Docket No. 16, Ex. 7 (Dalton d/o/b 3/25/58); Docket No. 16, Ex. 8 (Sebastian d/o/b 7/10/50); and Docket No. 16, Ex. 9 (Zillian d/o/b 6/28/52). As a result, I find that Plaintiff has failed to meet the fourth prong of his *prima* facie test. Therefore, summary judgment in favor of Defendant as to Plaintiff's ADEA claim is warranted on this ground alone, as well.

Nevertheless, even if I did not find summary judgment was warranted as to the third or fourth prong of Plaintiff's *prima facie* case, summary judgment as to Plaintiff's ADEA claim would still be warranted based on pretext.

### 3. **Pretext**

If Plaintiff meets his *prima facie* case, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Kautz v. Met-Pro Corp.,* 412 F.3d 463, 465 (3d Cir. 2005). Here, Defendant has asserted that Plaintiff's ultimatum was due to a reduction in force. Thus, the burden shifts back to Plaintiff to prove, by a preponderance of the evidence, that the reduction in force was a mere pretext for discrimination.

It appears as though the crux of Plaintiff's pretext argument is that two new mechanical supervisors, Ms. Musto and Mr. Bilinsky,[2] arrived at Conway after he was given the option to transfer. *See,* Brief in Opposition, p. 10. After a review of the record, I disagree with Plaintiff. To begin with, Mr. Bilinsky became a mechanical supervisor at Conway in August of 2003. *See,* Docket No. 16, Ex. 6. Plaintiff was not

---

[2] It is interesting to note that both Mr. Bilinsky and Ms. Musto are older in age than Mr. Armstead. *Compare,* Docket No. 15, Ex. 2 (Armstead d/o/b 4/23/60); *with,* Docket No. 16, Ex. 6 (Bilinsky d/o/b 3/11/52) and Docket No. 16, Ex. 11 (Musto d/o/b 10/14/59).

13

given his ultimatum until November 21, 2003. Docket No. 16, Ex. 13, pp. 17, 21. As a result, there is no genuine issue that Mr. Bilinsky arrived at Conway before Plaintiff was given his ultimatum. Furthermore, there is no genuine issue that Mr. Bilinsky was part of the pool of mechanical supervisors that were considered for the transfer. Docket No. 16, Ex. 13, p. 10. Consequently, there is no merit to this argument.

Ms. Musto is an administrative assistant, and was given the title of mechanical supervisor in August of 1999, when Defendant took over operations. Docket No. 22-5, pp. 27-29; Docket No. 16, Ex. 10; Docket No. 16, Ex. 11. She handles office duties as indicated in her resume. Docket No. 16, Ex. 11. On May 1, 2004, she changed work locations from Pittsburgh to Conway, but did not work in the railroad yard. Rather, Ms. Musto continued to do the same administrative work at Conway. *Id.* Consequently, Ms. Musto did not come into Conway as a mechanical supervisor on the car or locomotive side, nor did she ever perform mechanical supervisory duties in the car shop or in the yard of a nature similar to those duties performed by Plaintiff. *Id.* Thus, I find no merit to the argument that Ms. Musto replaced him as a mechanical supervisor on the car side six months after his ultimatum.

The only other argument proffered by Plaintiff is that there were younger, less senior mechanical supervisors at Conway that were not considered as part of the pool. *See,* Brief in Opposition, p. 10. The only employee the record evidences is younger than Plaintiff is Ms. Dineen. *See,* Docket No. 16, Ex. 14 (Dineen d/o/b 6/4/81). Plaintiff cannot selectively choose a comparator. *Simpson v. Kay Jewelers,*

*Inc.*, 142 F.3d 639, 645 (3d. Cir.1998). "Plaintiff has the burden of demonstrating that similarly situated persons were treated differently." *Id., citing, Burdine*, 450 U.S. at 258, 101 S.Ct. at 1096. Ms. Dineen, however, worked on the locomotive side, which I have determined was not within the proper pool of candidates.[3] Moreover, "[T]he mere favorable treatment of one younger [employee] as compared to one older [employee] may not be sufficient to infer age discrimination." *Id.* That is precisely the situation here: Plaintiff has produced nothing more than the mere fact that Defendant did not issue the ultimatum to one female employee that was younger than he. This will not suffice to show pretext. *See, e .g., id.* at 646 ("A decision adversely affecting an older employee does not become a discriminatory decision merely because one younger employee is treated differently.").

As a result, looking at all of the evidence in a light most favorable to the plaintiff, and drawing all reasonable inferences in his favor, I find that Plaintiff has failed to demonstrate that Defendant's reason is pretextual or that Plaintiff's age was more likely the determining factor. Therefore, summary judgment is warranted as to Plaintiff's ADEA claim.

**C. COUNT II - REVERSE GENDER DISCRIMINATION PURSUANT TO TITLE VII**

Count II of Plaintiff's Complaint asserts a cause of action for reverse gender discrimination in violation of Title VII. *See,* Complaint. Title VII makes it an "unlawful

---

[3] Plaintiff identifies a number of individuals in his deposition, but does not provide any evidence of their age other than his testimony. A plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment. *Celotex*, 477 U.S. at 324; *Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238, 252 (3d Cir. 1999). Moreover, none of the individuals worked on the car side at Conway. Consequently, I find that Plaintiff has failed to raise a genuine issue as to those individuals.

employment practice for an employer…to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, gender or national origin." 42 U.S.C. §2000e-2. As with age discrimination, there are two avenues of proving a Title VII claim: (1) direct evidence under a "mixed motives" theory of liability, *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989), or (2) circumstantial evidence of discrimination under a burden shifting theory of liability. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Because there is no direct evidence presented in the record and because both parties appear to argue that this case is a case of circumstantial evidence, I will proceed with a burden shifting analysis set forth in *McDonnell Douglas*.

To prevail under the burden shifting analysis, Plaintiff must first establish a *prima facie* case of discrimination. Ordinarily, to establish a *prima facie* case under Title VII, a plaintiff must prove: (1) that he is a member of a minority group, (2) that he applied for an available position for which he was qualified (or was qualified for the position), (3) that he was rejected (or discharged), and (4) that following the rejection (or discharge), the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312-13 (1996); *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir. 1995), *citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Pivirotto v. Innovative Systems, Inc.,* 191 F.3d 344, 353 (3d Cir. 1999). In a reverse discrimination context, however, a problem arises because the plaintiff is

necessarily a non-minority, and therefore, could never pass the first element of a *prima facie* case under Title VII. *Iadimarco v. Runyon,* 190 F.3d 151, 161 (3d Cir. 1999). Thus, the Third Circuit has developed a modified burden shifting analysis. *Id.* "[A]ll that should be required to establish a prima facie case in the context of 'reverse discrimination' is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." *Id.*

If the Plaintiff is successful in establishing a *prima facie* case, the remainder of the burden shifting analysis stays the same. As a result, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the rejection/termination. *Id.,* at 166-67. The defendant, however, is not required to show that the nondiscriminatory reason was the motivating reason for the rejection/termination. *See, Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 148, 254 (1981). Thus, it is a minimal burden for the defendant to meet.

If the defendant meets this minimal burden, then the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination. *McDonnell Douglas,* 411 US. at 802; *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir. 1997). To succeed on this element of the burden shifting test, a plaintiff must now point to evidence from which a reasonable fact finder could conclude either: (1) that the employer's articulated legitimate reasons are unworthy of belief (i.e. pretextual), or (2) that unlawful discrimination "was more likely than not a motivating or determinative

cause of the adverse employment action." *Fuentes,* 32 F.3d at 764; *Sheridan v. E.I. Dupont de Nemours and Co.,* 100 F.3d 1061 (3d Cir. 1996), *cert. denied,* 521 U.S. 1129 (1997). To prove pretext:

> [T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incohererencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them "unworthy of credence"…and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons"….

*Fuentes,* 32 F.3d at 765 (citations omitted).

### 1. **Treating males less favorably than others based upon gender**

Defendant argues that Plaintiff cannot establish a *prima facie* case of reverse gender discrimination asserting that Plaintiff has failed to produce any evidence that there were similarly situated females that were treated more favorably than he. *See,* Docket No. 14, pp. 18-19. The only females identified by Plaintiff are Ms. Musto and Ms. Dineen. For the reasons set forth above discussing Plaintiff's ADEA claim, I find that Ms. Musto and Ms. Dineen are not similarly situated. Consequently, I find that there is no genuine issue of material fact that Defendant treated Plaintiff, a male employee, less favorably that similarly situated female employees. Therefore, on this basis alone, summary judgment in favor of Defendant is warranted as to Plaintiff's Title VII claim of reverse gender discrimination.

Nevertheless, even if Plaintiff meets his *prima facie* case, summary judgment would still be warranted based on pretext.

### 2. **Pretext**

Plaintiff is not clear on his pretext argument as to reverse gender discrimination. *See,* Brief in Opposition, pp. 10-11. The only two female employees identified by Plaintiff, however, are Ms. Musto and Ms. Dineen. Because Plaintiff's Title VII claim arises out of the same facts as the ADEA claim, for the reasons discussed above under the ADEA pretext section, Plaintiff's Title VII pretext argument must fail. Consequently, summary judgment is warranted as to Plaintiff's Title VII claim.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY A. ARMSTEAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 04-1675 |
| NORFOLK SOUTHERN CORPORATION, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## **ORDER OF COURT**

And now, this **2nd** day of March, 2006, after careful consideration of Defendant's Motion for Summary Judgment (Docket No. 13) and Plaintiff's opposition thereto, it is ordered that said Motion (Docket No. 13) is granted. Judgment is entered in favor of Defendant and against Plaintiff. This case is marked "CLOSED."

BY THE COURT:

/S/  Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge